IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 07-cv-02413-CMA-MJW

ALFRED SANCHEZ,

    Plaintiff,

v.

SOUTH CONEJOS SCHOOL DISTRICT RE-10
MR. ANDREW GURULE (Chairman of the Board), and
CARLOS GARCIA (Superintendent and individually),

    Defendants.

## ORDER AND MEMORANDUM OF DECISION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 44). Plaintiff Alfred Sanchez originally filed this action in Conejos County, Colorado District Court against Defendants South Conejos School District Re-10 ("the District"), Andrew Gurule in his official capacity, and Carlos Garcia in his individual and official capacity (collectively "Defendants"). Although Plaintiff's complaint was based almost entirely on state law claims, it did contain one claim alleging violation of 42 U.S.C. §1983. Thus, Defendants removed the matter to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

## FACTS

**I.    <u>FACTUAL BACKGROUND</u>**

For purposes of the Motion for Summary Judgment, the Court views the facts in the light most favorable to Plaintiff. *See Clanton v. Cooper*, 129 F.3d 1147, 1153

(10th Cir. 1997). Because the Court's opinion is limited to the section 1983 claim, the following recitation of facts is limited to those facts pertinent to the disposition of this federal claim.

Plaintiff was employed as a probationary first-year teacher in the District for the 2006-07 school year. (Doc. # 44, Ex. A-4.) He taught physical education, assisted in teaching literacy skills at Guadalupe Elementary School, and coached high school wrestling and junior varsity football. *(Id.)* At all times during Plaintiff's employment in the School District, Defendant Andrew Gurule was President of the School District's Board of Education and Carlos Garcia was Superintendent of the School District. (Doc. # 51.)

On May 17, 2007, Plaintiff delivered a letter dated May 16, 2007, to the Board of Education. (Doc. # 45, Ex. 4.) The Sanchez letter consisted of the following three paragraphs:

> This letter is intended to inform you and the Antonito School District RE-10 of the neglectful information that has been given as to my renewal status. I was informed by Mr. Carlos Garcia on May 3rd that a decision was going to be made to determine my renewal status. On Monday May 7, 2007 Mrs. Marcella Garcia informed me that a decision was not made at the board meeting. Also, on Monday Mr. Garcia informed me that a special board meeting would take place on Saturday May 12, 2007 to determine my renewal status. I called Mr. Garcia cell phone on Saturday to no response. Next, I called Mrs. Garcia Phone and was informed that I was renewed. On Monday morning May 14, 2007 I thanked Mrs. Garcia for both my renewal status and for supporting me through this heavy burden. However, today May 16, 2007 Mr. Garcia informed me in my classroom that a decision has not been made over my renewal status.

2

> Mr. Garcia informed me that there is a small possibility that I will not be renewed and it will be talked about in executive session at the next board meeting.
>
> The problem with this new information is it possibly ruined my chances in getting a job at another school that I had already interviewed with. After I was informed that my renewal status was questionable I started looking for other jobs. I informed Mrs. Garcia that I needed a letter of recommendation and I would be applying at other schools. In good faith on Monday May 14, 2007 I informed Wherry Elementary, the school I interviewed with that I was renewed and in support to my principal, made a decision to stay working at Guadalupe Elementary.
>
> In light of new information, I need a letter from South Conejos School RE-10 stating that I was misinformed about my renewal status at the special board meeting that was held Saturday May 12, 2007. Also, with no reservations recommend Mr. Sanchez for any teaching position. I would like to fax this information to the principal at Wherry Elementary as soon as possible (today) to minimize future implication to South Conejos School RE-10.

(*Id.*)

On May 29, 2007, Defendant Carlos Garcia submitted a recommendation to the Board of Education for non-renewal of Plaintiff's contract for the 2007-08 school year. (Doc. # 51.) On that same date, the Board of Education voted not to renew Plaintiff's contract. (Doc. # 44, Ex. A-8.) On May 30, 2007, Defendant Carlos Garcia mailed a letter to Plaintiff advising him that the Board of Education would not renew his employment contract. (*Id.*, Ex. A-7 at 19-20.)

Plaintiff asserts that the sole reason he was not renewed was because of the letter he delivered to the Board of Education on May 17, 2007. (Doc. # 45, Ex. 3

3

at 88: 3-10.)  Plaintiff describes the letter as "condemning the school board for administrative conflicts in hiring, cronyism, abuse of power and mismanagement." (Doc. # 2, ¶ 24.)  Plaintiff also asserts that Defendant Gurule told Plaintiff that the letter Plaintiff wrote to the School Board was "the nail that sealed the coffin" as to Plaintiff's non-renewal.  (Doc. # 45, Ex. 3 at 88: 14-21.)

## II.     PROCEDURAL HISTORY

On October 27, 2007, Plaintiff filed a complaint in Colorado state court against the following defendants:  South Conejos School District RE-10, Andrew Gurule, Veronica Velasquez, Carlos Garcia, Jane Corn, the Colorado Education Association, and Uniserv and Antonito Classroom Teachers Association.[1]  (Doc. # 2.)  Defendants removed the case to this Court on November 16, 2007.  (Doc. # 1.)  Though not explicit in his complaint, Plaintiff's lone federal claim is brought under 42 U.S.C. § 1983, asserting a claim for retaliation in response to exercising his First Amendment rights.  (See Doc. # 2, ¶ 63.)  Plaintiff also alleges a variety of state-law claims, which are not addressed herein, except as provided in section II.B below.  (Id., ¶¶ 64-67.)  Defendants filed an answer to Plaintiff's complaint on November 19, 2007.  (Doc. # 10.)

On September 4, 2008, the Defendants filed a motion for summary judgment arguing that Plaintiff's First Amendment claim fails because Plaintiff's alleged protected speech did not address matters of public concern.  (Doc. # 44 at 8-9.)  On September

---

[1]     Plaintiff voluntarily dismissed his claims against all defendants, except the three remaining defendants.

4

16, 2008, Plaintiff filed a response to Defendants' motion for summary judgment. (Doc. # 45.) On August 4, 2004, Defendants filed a reply in further support of their motion for summary judgment. (Doc. # 46.)

## ANALYSIS

I. <u>**STANDARD OF REVIEW**</u>

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Curt must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

5

## II. EVALUATION

### A. Section 1983 - Freedom of Speech Retaliation Claim

Plaintiff alleges that Defendants' failure to renew his contract was in retaliation for his having exercised his First Amendment right to free speech in violation of 42 U.S.C. § 1983. To prevail on his claim, Plaintiff must establish that there was a deprivation of a federal or constitutional right by a person acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

At first blush, the facts of this case appear to satisfy the two prongs of a section 1983 claim. Plaintiff alleges a deprivation of his First Amendment right to free speech, allegedly caused by a public school board and two of its employees acting in their official capacities. Upon closer examination, however, it becomes evident that Plaintiff is unable to meet his burden of proof with respect to the elements of his claim.

In analyzing Plaintiff's First Amendment retaliation claim, the Court must apply the five-step inquiry set forth in *Garcetti/Pickering*. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). The first three of these steps involve questions of law and the final two involve questions of fact. *Id.* at 1203.

First, the Court must determine whether the employee spoke pursuant to his official duties or whether he spoke as a citizen. If the employee spoke pursuant to his official duties, there is no constitutional protection and the inquiry ends. If the employee

spoke as a citizen, the analysis proceeds to step two, in which case, the Court must determine whether the subject of the speech is a matter of public concern.  Third, if the employee speaks as a citizen on a matter of public concern, the Court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.  Fourth, assuming the employee's interest outweighs the interest of the state as employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision.  Finally, if the employee establishes that his speech was such a factor, the employer may still avoid liability if it demonstrates that it would have taken the same approach even in the absence of the protected speech.  *Id.*

Neither party addressed the first step of the test which asks whether Plaintiff's speech was spoken pursuant to his official duties.  Speech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do.  *Id.* (citing *Green v. Bd. of County Commr's*, 472 F.3d 794, 801 (10th Cir. 2007)).  The substance of the letter in the instant case is unrelated to Plaintiff's duties as a physical education teacher or coach.  Therefore, the Court finds as a matter of law that Plaintiff wrote his letter, not in his role as teacher, but as a citizen airing a grievance against his employer.

At step two, the Court is charged with deciding "whether the speech at issue touches on a matter of public concern."  *See Casey v. West Las Vegas Indep. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (citing *Dill v. City of Edmond*, 155 F.3d 1193,

1201 (10th Cir. 1998)).  A matter of public concern is one which is of interest to the community, whether for social, political, or other reasons.  *Dill,* 155 F.3d at 1202.  "Matters solely of interest to a government employee . . . are not protected by the First Amendment."  *Id.*  Consequently, "speech related to internal personnel disputes ordinarily does not involve public concern" whereas "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of . . . officials . . . clearly concerns matters of public import."  *Id.* (quotation omitted).

Whether a given statement is a matter of public concern is a question of law to be determined by the Court.  *See Brammer-Hoelter*, 492 F.3d at 1205; *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003).  In making this determination, the Court must consider the "content, form, and context of a given statement, as revealed by the whole record."  *Connick v. Myers*, 103 U.S. 1684, 1690 (1983); *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996).  The Court should also consider the speaker's motive, asking whether the speech was calculated to redress a personal grievance or if it had a broader public purpose.  *Gardetto*, 100 F.3d at 812.

In order to state a claim for violation of section 1983, *i.e.*, retaliation related to his exercise of his First Amendment right to free speech, Plaintiff alleges in his Complaint that his May 16, 2007 letter addressed matters of public concern:  "On or about May 16, 2007, Plaintiff published a letter condemning the school board for administrative conflicts in hiring, cronyism, abuse of power and mismanagement."  (Doc. # 2, ¶ 24.)

Contrary to Plaintiff's assertions, however, nowhere in this letter is there even the slightest reference to "conflicts in hiring, cronyism, abuse of power and mismanagement." A review of the actual text of Plaintiff's May 16, 2007 letter reveals that Plaintiff's allegations are merely a disingenuous attempt, bordering on a Rule 11 violation, to state a claim for relief when, in actuality, such a claim does not exist. The letter addresses purely private concerns related to the status of Plaintiff's renewal. Plaintiff felt misled about his reappointment status and said so in the letter. Even read in the light most favorable to Plaintiff, nothing in the letter's three paragraphs addresses any issue of public concern. Rather, the letter relates to a personal employment issue. The question becomes, then, can a personal employment issue constitute a matter of public concern?

The Court acknowledges that there may be circumstances in which it is possible for a personal employment issue to constitute a matter of public concern, but the instant case is not one of those situations. To qualify, the speech must go beyond the scope of a personal issue and also touch on allegations of official impropriety or corruption. *See Brammer-Hoelter*, 492 F.3d at 1205; *Dill*, 155 F. 3d at 1202. In other words, the substance of the speech must not be limited to a purely private concern, but rather, must have a broader public purpose. *Gardetto*, 100 F.3d at 812; *see also Brammer-Hoelter*, 492 F.3d at 1206 (allegation that a school's code of conduct may restrict teachers' freedoms of speech qualifies as a matter of public concern, even though

it may overlap with personal employment concerns). Nothing in the substance of Plaintiff's letter qualifies as a matter of public concern.

As stated in *Brammer-Hoelter*, "speech that simply airs 'grievances of a purely personal nature' typically does not involve matters of public concern.'" *Id.* (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1225 (10th Cir. 2000)). Indeed, the *Brammer-Hoelter* court held that the plaintiff-teachers' criticisms of the defendant-school board were not matters of public concern because they were "internal in scope and personal in nature." *Brammer-Hoelter*, 492 F.3d at 1206 (quoting *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996)).

Additionally, the Tenth Circuit has held the following matters not to constitute matters of public concern: speech regarding grievances about internal departmental affairs, *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996); disputes over the term of employment, *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1233-34 (10th Cir. 1998); and workplace frustration, *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989).

In the instant case, there is not one sentence in Plaintiff's letter that can be interpreted as raising issues of public concern. In sum, because Plaintiff's letter does not address a matter of public concern, his claim fails at step two of the *Pickering/Garcetti* analysis. A discussion of the remaining steps is therefore unnecessary. Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment claim.

## B. State-Law Claims

In addition to his section 1983 claim, Plaintiff asserts a host of state-law claims including breach of contract, wrongful non-renewal, contract interference, and promissory estoppel. A district court which has dismissed all claims over which it had original jurisdiction may decline to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. §1367(c)(3); *Howard v. Jaramillo*, Slip Copy 2008 WL 5381469 at *9 (D. Colo. December 22, 2008). Pursuant to *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966), the decision regarding whether the Federal court should exercise jurisdiction over purely state law claims rests in the sound discretion of the district court. *See also Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 370 F.3d 1161, 1165 (10th Cir. 2004). Moreover, the Tenth Circuit has indicated that if federal claims are dismissed before trial, as in the instant case, leaving only issues of state law, the Court should decline to exercise jurisdiction over the state claims. *Ashley Creek Phosphate Co. v Chevron USA, Inc.*, 315 F.3d 1245, 1264 (10th Cir. 2003).

Given that Plaintiff's lone federal claim has been disposed of, the Court declines to exercise jurisdiction over Plaintiff's pendent state-law claims. The Court is mindful of the potential prejudice to Plaintiff if the Court were to dismiss the state claims, *i.e.*, Plaintiff may be barred from re-litigating them in state court due to the applicable statute of limitations. In light of fairness, comity, and judicial economy, the state claims will not

be dismissed; instead, the Court remands this case back to the Conejos County, Colorado District Court for purposes of resolving the pending state claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED with respect to the First Amendment claim brought under 42 U.S.C. § 1983.

The remaining state claims are hereby REMANDED back to the Conejos County, Colorado District Court .

DATED: March  13 , 2009

BY THE COURT:

*[signature: Christine M Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge